## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **STEPHEN ANTHONY MARQUEZ** | § | |
| | § | |
| **V.** | § | **A-16-CV-1057-RP** |
| | § | |
| **LORIE DAVIS** | § | |

## ORDER

Petitioner is pro se in this matter and has paid the full filing fee for this case. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 and his memorandum in support of his application (Docket Entry "DE" 1), Respondent's Answer (DE 7), and Petitioner's Reply (DE 11). For the reasons set forth below, Petitioner's Application for Writ of Habeas Corpus is **denied**.

## STATEMENT OF THE CASE

Respondent has custody of Petitioner pursuant to a conviction entered by the 22nd District Court of Hays County, Texas. Petitioner was found guilty of three counts of aggravated sexual assault of a child, and sentenced to concurrent terms of fifty years' imprisonment. Petitioner asserts he is entitled to federal habeas relief because he was denied his right to the effective assistance of counsel.

## BACKGROUND

### A.    Factual Background

The following facts are taken from the Texas Court of Appeals' decision denying Petitioner's appeal:

> Appellant's stepdaughter, "Anna," told her mother in 2008 that appellant had put his fingers in her vagina two years earlier. Anna testified at trial that he assaulted her seven or eight times on different days. Anna's mother, "Mary" testified that she

called appellant to confront him and that he responded by saying "he knew eventually that I was going to find out and that everything she said he did, he did and not to worry about the police or anybody else because he was going to kill himself for what he had done." Mary testified that appellant then drove out to a lake and attempted to kill himself by slitting his throat. His medical records include reports that he told doctors that he had touched his stepdaughter inappropriately and that he was remorseful.

At trial, appellant denied committing the offenses. He admitted to having been suicidal but attributed that to his belief that his marriage was ending. He also described an incident on a camping trip when Anna asked if he would massage her feet, which was something he had done before. He said that, as he was massaging her feet, he noticed that she put her hand on her private parts over her clothes. He testified that he stopped the massage immediately and told her to go to bed. Thereafter, he said, he did not feel comfortable around Anna. He felt awkward and did not trust her. He testified that, when Mary called him two weeks later, Anna's accusations made him want to die. He did not recall telling hospital personnel that he had touched his stepdaughter inappropriately, but said he might have simply agreed that he committed the offenses because he was confused and medicated because of what he described as false accusations and his failing marriage. He also indicated that Mary had threatened that the only way to save their marriage was to seek counseling for the alleged sex offenses.

Appellant testified that he continued to live with Mary and her daughters periodically after the allegations were made. He said that he filed for divorce in 2010, and only then did Mary obtain a protective order against him. He testified that the divorce proceedings were contentious and that Mary told him that she would leave him penniless and that he would have a hard time explaining why he checked himself into the hospital.

*Marquez v. State*, No. 03-13-00386-CR, 2014 WL 4414820, at \*1-\*2 (Tex. App.–Austin 2014, pet.

ref'd).

### B.     Petitioner's Criminal Proceedings

A grand jury indictment returned October 3, 2012, charged Petitioner with three counts of

aggravated sexual abuse of a child younger than 14 years of age, alleging these assaults occurred in

October, November, and December of 2006. (DE 6-24 at 4).[1] Prior to trial, Petitioner's counsel filed a motion to suppress and a motion in limine with regard to evidence of Petitioner's suicide attempt upon learning of the outcry, and his ensuing in-patient psychiatric treatment at a VA hospital. (DE 6-8 at 6-9, 12-78; DE 6-15 at 18-19). Petitioner's counsel argued Petitioner's VA hospital records were comprised of hearsay and raised issues regarding Petitioner's right to confront witnesses against him. (DE 6-8 at 6-7, 12-78).[2] Defense counsel also objected to the form of the business record affidavit authenticating the medical records, which objection was overruled. (DE 6-8 at 74-77). The trial court ultimately concluded that the records were admissible as authenticated, but that defense counsel could raise other objections to the admission of discreet portions of the records, (DE 6-8 at 74-76, 77), and ruled that portions of the medical records were inadmissible. (DE 6-8 at 31, 36, 40, 41, 42, 44, 46).

Defense counsel also moved to exclude testimony by Mr. Steege, a clinical social worker, based on attorney-client privilege. (DE 6-8 at 55-56, 68). Mr. Steege had interviewed Petitioner twice, once as a private client and once at the behest of Petitioner's counsel. (DE 6-8 at 68-69). The trial court ruled that Mr. Steege's testimony regarding the first meeting was admissible, and excluded his testimony as to the second meeting, finding this testimony barred by the doctrine of attorney-client privilege. (DE 6-8 at 70, 72).

Petitioner was represented by retained counsel at his trial, (DE 6-5 at 11), and testified during the guilt phase of his trial. (DE 6-10 at 67-123). After deliberating for less than an hour, (DE 6-10

---

[1] The initial police report was made in Bexar County. (DE 6-5 at 8). The allegations were investigated in 2008 and "sent over to the Hays County Sheriff's Department, and, apparently, nothing was done on it until 2012." (DE 6-5 at 7) (transcript of pretrial hearing on motion to lower bond).

[2] The State Court Record in this matter is lodged at CM/ECF docket number 6.

at 166; DE 6-11 at 7-8; DE 6-24 at 11), the jury found Petitioner guilty on all three counts alleged in the indictment. (DE 6-24 at 11-13). The jury was instructed to assess punishment at not less than 5 years, or more than 99 years or life imprisonment. (DE 6-24 at 14). The jury assessed punishment at a term of 50 years' imprisonment and a fine of $10,000 on each count of conviction, (DE 6-24 at 17-22), and the trial court ordered that the terms of confinement be served concurrently. (DE 6-24 at 24-31).

Petitioner, through counsel, moved for a new trial. (DE 6-24 at 32-33). Petitioner alleged the trial court had improperly admitted evidence and erroneously denied Petitioner's request for a continuance to review evidence, and that the verdict was contrary to the law and the evidence. (DE 6-24 at 32-33). Because no order denying the motion appears in the record, it is presumed the motion was denied by application of law.

Petitioner, through appointed counsel, (DE 6-15 at 76), appealed his conviction and sentence, asserting that the trial court erred by allowing the State to bolster the victim's credibility through her mother's testimony before the victim's credibility was attacked. *Marquez v. State*, No. 03-13-00386-CR, 2014 WL 4414820, at *1-*2 (Tex. App.–Austin 2014, pet. ref'd). The Texas Court of Appeals denied relief and the Texas Court of Criminal Appeals denied a petition for discretionary review. *Id.*

Petitioner filed an application for state habeas relief, asserting he was denied his right to the effective assistance of trial and appellate counsel. (DE 6-24 at 45-90). Petitioner's appellate counsel filed an affidavit in his state habeas action, refuting Petitioner's claims that counsel's performance was deficient. (DE 6-24 at 113-19). The state trial court issued an order denying the state writ on

March 3, 2016. (DE 6-24 at 120). The Texas Court of Criminal Appeals denied relief without written order. (DE 6-23).

### C.    Petitioner's Federal Habeas Claims

Petitioner raises seven claims that his trial and appellate counsels' performance was unconstitutionally deficient. (DE 1 & 1-1). Petitioner asks this Court to vacate his convictions and enter a judgment of acquittal. (DE 1).

Respondent allows that the petition is timely and that Petitioner properly exhausted his federal habeas claims in the state courts. (DE 7 at 4).

## ANALYSIS

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). The Supreme Court noted that the starting point for any federal court reviewing a state conviction is 28 U.S.C. § 2254, which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court stated that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100, *citing* 28 U.S.C. § 2254(d), *and Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "contrary to" requirement refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Under the unreasonable application clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 (quotation and citation omitted). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the legitimacy of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). To be entitled to relief, the petitioner "'must show that the state court's ruling . . . was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011), *quoting Harrington*, 562 U.S. at 103.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).

*Harrington*, 562 U.S. at 102-03 (some internal citations omitted). The Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Grim v. Fisher*, 816 F.3d 296, 304 (5th Cir.) (internal quotations omitted), *cert. denied*, 137 S. Ct. 211 (2016).

Ineffective assistance of counsel claims present mixed questions of law and fact. *Williams*, 529 U.S. at 419. Section 2254(e)(1) requires a federal court to presume state court factual determinations to be correct, although a petitioner can rebut the presumption by clear and convincing evidence. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). This presumption extends not only to express findings of fact, but also to implicit findings of fact by the state court. *Register v. Thaler*, 681 F.3d 623, 629 (5th Cir. 2012). The Supreme Court has "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)." *Wood v. Allen*, 558 U.S. 290, 300 (2010). However, the Fifth Circuit Court of Appeals has held that, while section 2254(e)(1)'s clear and convincing standard governs a state court's resolution of "particular factual

issues," the unreasonable determination standard of section 2254(d)(2) governs "the state court's decision as a whole." *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011). *See also Hoffman v. Cain*, 752 F.3d 430, 441-42 (5th Cir. 2014) ("it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2)." (internal quotations omitted)), *cert. denied*, 135 S. Ct. 1160 (2015).

This standard of review applies to Petitioner's federal habeas claims notwithstanding the fact that the Texas Court of Criminal Appeals' decision denying relief in Petitioner's state habeas action was unexplained. Although the state court did not make explicit findings, that does not mean the court "merely arrived at a legal conclusion" unworthy of the presumption of correctness. *Cantu v. Collins*, 967 F.2d 1006, 1015 (5th Cir. 1992), *citing Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983). If a state court summarily denies a petitioner's claims, the Court's authority under AEDPA is still limited to determining the reasonableness of the ultimate decision. *Charles v. Thaler*, 629 F.3d 494, 498-99 (5th Cir. 2011); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002). When state habeas relief is denied without an opinion, the Court must assume that the state court applied the proper "clearly established Federal law," and then determine whether the state court decision was "contrary to" or "an objectively unreasonable application of" that law. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

## B.    The *Strickland* Standard Governing Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

When deciding whether counsel's performance was deficient, the Court must apply a standard of objective reasonableness, mindful that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

The prejudice prong of *Strickland* provides for federal habeas relief only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694. "'The likelihood of a different result must be substantial, not just conceivable.'" *Trevino v. Davis*, 829 F.3d 328, 351 (5th Cir. 2016), *quoting Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) ("For Turner's counsel to be deficient in failing to object, the objection must have merit under Texas law."); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). And the "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

In considering a state court's application of *Strickland*, AEDPA review must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015); *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). When evaluating Petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded Petitioner's complaints about his counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle*, 343 F.3d at 444.

## C.    Analysis of Petitioner's Claims for Relief

Petitioner's claims for federal habeas relief are predicated primarily on Petitioner's contention that the admission of his medical records from the VA hospital, which records contained incriminating statements by Petitioner to his health care providers, were inadmissible because the statements were hearsay and because the admission of these statements via these records violated his right to confront the witnesses against him. Petitioner argued these claims in his state application for habeas relief. The state trial court judge, who also presided over Petitioner's trial, initially denied habeas relief, and the writ was denied without written order by the Texas Court of Criminal Appeals.

As noted by the State in Petitioner's state habeas action:

> Applicant' s trial counsel filed a Motion to Suppress on January 7, 2013 in an attempt to exclude any hearsay statements attributed to the applicant that: (1) fail to comply with "statements" and/or "admissions" as defined by the Texas Code of Criminal Procedure; (2) are within mental health medical records and are neither direct quotes, nor recorded; and (3) are protected by attorney-client privilege. (CR 18). State's Exhibit 2, the Applicant's medical records, contained several of the alleged hearsay statements that the defense was attempting to suppress. (10 RR 10).

> . . . Applicant's trial counsel made several objections to the statements within the medical records, including: (1) that any assertions attributed to the applicant were not "statements" that would qualify as statement by party opponent under Rule 801(e)(2)(A); (2) that the statements within the records were not of sufficient reliability to be admitted as nonhearsay or under an exception to hearsay under Rule 803; and (3) that the admission of the medical records through a business records affidavit without the testimony of the underlying medical providers violated the Confrontation Clause and *Crawford* holding.

The State further argued:

> . . . Applicant claims that his trial counsel was ineffective based on his assertions that the medical records, and the statements within the medical records, were wrongfully admitted into evidence and that his [] trial counsel failed to properly investigate and prepare for this issue at trial. However, trial counsel's conduct clearly falls within the realm of professional norms. Applicant's trial counsel filed a Motion to Suppress the statements made by the applicant within the medical records and

raised 18 individual hearsay within hearsay objections. Additionally, Applicant's trial counsel demonstrated a clear command over the facts of Applicant's case and the Texas Rules of Evidence, Texas Penal Code, and Texas Code of Criminal Procedure during the pretrial hearings, jury selection, the questioning of witnesses, and argument to the venire.

(DE 6-24 at 104).

Petitioner's appellate counsel filed an affidavit in Petitioner's state habeas proceedings. (DE

6-24 at 113-19). Counsel averred:

[A]ny statements by Mr. Marquez in the medical records are admissible under Texas Rule of Evidence 803(4), the exception to the hearsay rule for statements made for medical diagnosis or treatment. While there is case law that states that this exception does not apply to statements made to licensed social workers, the statements made by Mr. Marquez in the medical records were to medical personnel for the purpose of medical diagnosis or treatment. Marquez's statements in the medical records are also admissible as statements of a party opponent under Texas Rule of Evidence 801(c)(2)(A), since they were offered by the prosecution against Mr. Marquez.
***
I did not see any arguable confrontation issue in the introduction of Mr. Marquez's medical records because the statements Marquez made to medical personnel were nontestimonial statements made for the purpose of medical diagnosis or treatment, and thus would not be covered by the Sixth Amendment's confrontation clause. Additionally, Mr. Marquez himself testified at the guilt-innocence phase of trial, providing himself with an opportunity to refute his statements in the medical records. . . .

(DE 6-24 at 114-116).

The Texas Court of Criminal Appeals impliedly applied Texas state rules of evidence to

Petitioner's claims and concluded any omission by Petitioner's counsel to further object to the

admission of this evidence, or appellate counsel's failure to challenge the admission of the evidence

on appeal, was not deficient performance or prejudicial, as the objection or claim would have been

without merit. The state court's interpretation of its own rules of evidence is binding on this court.

If a state appellate court found evidence to be admissible pursuant to state rules, or if it found a claim

based on state law without merit, counsel's failure to object to the admission of the evidence or their

failure to assert the claim is not prejudicial because federal habeas courts are to review state court

misapplications of federal law, and this court may not rule that a state court incorrectly interpreted

its own law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Garza v. Stephens*, 738 F.3d 669, 677 (5th

Cir. 2013); *Charles*, 629 F.3d at 500-01 ("Because the state determined that [the] testimony was

permissible lay opinion under state evidentiary law . . . a federal habeas court may not conclude

otherwise."); *Schaetzle*, 343 F.3d at 449 ("[W]e defer to [the TCCA's] determination of state law.

'It is not our function as a federal appellate court in a habeas proceeding to review a state's

interpretation of its own law. . . .'") (citation omitted)). Petitioner's trial counsel cannot reasonably

be faulted for failing to object to admissible evidence. *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir.

2012).

And Petitioner's federal constitutional right to confront the witnesses against him was not

violated by the admission of the medical records. The Confrontation Clause of the Sixth Amendment

to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the

right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36,

53-54 (2004), the Supreme Court held that this right is violated when the prosecution introduces

"testimonial statements of a witness who did not appear at trial unless he was unavailable to testify,

and the defendant had a prior opportunity for cross-examination."

> Only testimonial statements cause the declarant to be a 'witness' within the
> meaning of the Confrontation Clause. [A] statement that is not testimonial cannot
> violate the Confrontation Clause. The *Crawford* Court described a testimonial
> statement as [a] solemn declaration or affirmation made for the purpose of
> establishing or proving some fact, a description which includes statements that were
> made under circumstances which would lead an objective witness reasonably to

believe that the statement would be available for use at a later trial. The Court declined to spell out a comprehensive definition of "testimonial" . . .

*Brown v. Epps*, 686 F.3d 281, 286-87 (5th Cir. 2012) (internal quotations omitted). Testimonial statements are those "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). "[I]f a statement is not made for the primary purpose of creating an out-of-court substitute for trial testimony, its admissibility is the concern of state and federal rules of evidence, not the Confrontation Clause." *Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 2243 (2012) (quotation omitted, emphasis added). Therefore, the admission of the medical records did not violate Petitioner's Confrontation Clause rights because they were medical records created for treatment purposes and, accordingly, non-testimonial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009); *Brown*, 686 F.3d at 288 (applying the factors of *Crawford* and its progeny).

The state court's application of *Strickland* cannot be found contrary to or an unreasonable application of federal law where the state court has determined that counsel's alleged failures were not prejudicial because any objection to the admission of allowable evidence would have been frivolous. Accordingly, Petitioner's claim that his trial counsel's performance was unconstitutionally deficient in "allowing" admission of this evidence, and his claim that his appellate counsel's performance was unconstitutionally deficient for failing to raise issues regarding admission of this evidence on appeal, must be denied.

### 1. Admission of business records

Petitioner asserts that the state trial court abused its discretion in allowing the admission of Petitioner's medical records into evidence as business records, over the objection of trial counsel.

14

Petitioner argues that his appellate counsel's performance was deficient because he did not assert this issue on appeal. (DE 1 at 6). Petitioner raised these claims in his application for a state writ of habeas corpus. (DE 6-24 at 51).

To succeed on an ineffective assistance of appellate counsel claim, a petitioner must first show that his counsel's performance was objectively unreasonable in failing to find arguable issues to raise in the appeal, i.e., that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising those issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To establish ineffective assistance when appellate counsel filed a merits brief, a petitioner must show that "a particular nonfrivolous issue was clearly stronger than issues counsel did present." *Smith*, 528 U.S. at 288. The process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotations omitted). If the petitioner is able to establish that appellate counsel's performance was deficient, he then must demonstrate prejudice arising from the deficient performance of appellate counsel. To establish prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to assert a particular claim on appeal, he would have prevailed in the appeal. *Smith*, 528 U.S. at 286; *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006).

Petitioner has not established either deficient performance or prejudice with regard to his appellate counsel. Appellate counsel's alleged failure to raise this claim on appeal, i.e., that the trial court erred by admitting the medical records, was not deficient performance or prejudicial because

any such claim was without merit and, accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 2. Trial counsel failed to seek an expert opinion

Petitioner argues that his trial counsel failed to obtain a mental health expert to establish Petitioner was "confused and possibly in shock" when he gave incriminating statements to his medical care providers at the VA hospital. (DE 1-1 at 7). Petitioner raised this claim in his state action for habeas relief, (DE 6-24 at 53), which claim was denied.

The deference to a state court resolution of a petitioner's habeas claim is heightened when the petitioner asserts a *Strickland* claim. To be entitled to habeas relief,

> [t]he state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. ___, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (internal quotation marks omitted). When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . ."

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The alleged failure to secure an expert does not per se constitute ineffective assistance of counsel. *See del Toro v. Quarterman*, 498 F.3d 486, 490-91 (5th Cir. 2007) (finding counsel's choice to not hire an expert reasonable under the circumstances, noting strategic choices made after a thorough investigation relevant to plausible options are "virtually unchallengeable."). A petitioner's unsupported claims regarding an uncalled expert witness "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) .

Additionally, Petitioner has not established that he was prejudiced by the failure to introduce expert testimony that he was confused and under the influence of medication when he gave incriminating statements to his medical care providers. Petitioner testified that he was medicated while at the hospital following his suicide attempt. (DE 6-10 at 73). Petitioner testified that one of the medications he was prescribed was "very powerful" and that it "had a big effect" on Petitioner. (DE 6-10 at 73). Upon cross-examination, Petitioner testified that he did not hallucinate on these medications, and allowed that he had told his doctors that he had touched his step-daughter inappropriately, although he denied remembering making those statements. (DE 6-10 at 88, 91-92). Petitioner testified: "I do not believe [the medical record] is made up. I believe that it's possible I gave incorrect statements during my stay in the VA . . . I would have agreed to anything, or I would have – I don't – I was very confused when I got admitted to the hospital." (DE 6-10 at 98). Petitioner further testified: "In my frame of mind when I was in the VA, all I wanted to do was die. I didn't care if they blamed me for anything. I would have admitted to anything." (DE 6-10 at 102). Petitioner testified that, although the medication he received at the VA "did not make me hallucinate," he also testified: "I do not think I was in the right frame of mind to answer correctly anything during my hospital stay at the VA." (DE 6-10 at 109).

Petitioner has not established prejudice as a result of his counsel's "failure" to procure a mental health expert – Petitioner has not established a "reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt." *Evans*, 285 F.3d at 377. The jury's verdict established that it found the victim credible and Petitioner not credible. Accordingly, because Petitioner cannot establish that counsel's alleged failure in this regard

17

was deficient or prejudicial, the state court's decision denying this claim was not an unreasonable application of *Strickland*.

### 3. Appellate counsel failed to raise a claim of prosecutorial misconduct–business record

Petitioner contends that the "state wrongly acquired [a] business record exception to hearsay and wrongly insisted business record affidavit 'self-authenticated' medical records as business records." (DE 1-1 at 10). Petitioner alleges the "prosecutor has a duty to refrain from improper methods calculated to produce a wrongful conviction." *Id.* Petitioner asserts his appellate counsel was ineffective for failing to "raise prosecutorial misconduct regarding business record entry." (DE 1 at 7). Petitioner raised this claim in his application for a state writ of habeas corpus. (De 6-24 at 55).

As explained above, the state court's conclusion that the admission of this evidence was not violative of the state rules of evidence is binding on this court, and Petitioner has not established that his federal constitutional rights were violated by the admission of this evidence. Accordingly, appellate counsel's performance was neither deficient nor prejudicial for failing to assert on appeal that the prosecutor committed misconduct by introducing this evidence and the state court's denial of relief was not an unreasonable application of *Strickland*.

### 4. Trial counsel failed to investigate and research the State's evidence

Petitioner maintains that his trial counsel failed to investigate the State's evidence, i.e., that counsel failed to obtain the business record affidavit and a complete copy of the medical records prior to trial. (DE 1 at 7). Petitioner contends that his trial counsel did not argue that "affidavits are testimony and subject to cross examination," and that his constitutional rights were violated due to counsel's error. *Id.* Petitioner raised this claim in his state habeas action. (DE 6-24 at 57).

In support of his allegation that trial counsel's performance was deficient, Petitioner cites the record of a hearing conducted the first day of trial. During this hearing on the motion to suppress the medical records, the trial court asked Petitioner's counsel: "Don't you have your own copy of the exhibit?" and counsel replied: "I don't." (DE 6-8 at 78). The prosecutor then noted counsel could have obtained a copy of the exhibit from the clerk's office when notified by the State prior to trial that it intended to introduce this evidence. Petitioner alleges that his counsel's failure to investigate this evidence led to counsel's inability to make a meaningful argument that this evidence was inadmissible. (DE 1-1 at 13).

A habeas petitioner may show counsel's assistance was deficient if their counsel failed to make a reasonable investigation into the case before trial. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). Counsel must, at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case. *Id.*

Any alleged failure by Petitioner's counsel to obtain a copy of these records prior to trial was not prejudicial. As noted by the State in Petitioner's state habeas action:

> The trial court admitted the medical records into evidence as an exception to hearsay, but allowed the defense to continue to raise hearsay within hearsay objections pursuant to Rule 805. (5 R.R. 14-54, 239-269).The State went through the specific statements that they intended to highlight to the jury, and during a subsequent bench conference, Applicant's trial counsel raised 18 additional objections to specific statements contained in the medical records. (5 RR 239). The trial court sustained multiple objections by applicant's trial counsel as to particular statements, including but not limited to objections to: (1) the relevance of the statements concerning the victim's sister; (2) a lack of the requisite indicia of reliability needed to qualify as a statement for medical diagnosis or treatment; (3) the unnecessarily repetitive or cumulative nature of the admissions within the medical records; (4) the prejudicial nature of the statements; and (5) improper bolstering. Ultimately, the trial court admitted a redacted copy of the medical records over defense counsel's continued objections. (6 RR 6). The court read a limiting

instruction to the jury that the redactions within the State's exhibit could not be considered by the jury when weighing the evidence. (6 RR 11).

(DE 6-24 at 95-96) (footnotes omitted).

At the conclusion of the first day of testimony, defense counsel indicated to the court that his associate had gone through each page of the medical records "to make those additional objections to pages that were not detailed by the State." (DE 6-8 at 231). The trial court, defense counsel, and the State then engaged in a page-by-page examination of the medical records, discussing what statements might or might not be admissible. (DE 6-8 at 244-67). The Notice of Business Record Filing and the medical records, as admitted at trial as State's Exhibit 2, are at CM/ECF Docket Number 6-13 at 8- 134. The affidavit states that 219 pages of records were supplied, and 124 pages of those records comprise the medical records that were admitted as evidence. Accordingly, the record indicates that counsel's efforts resulted in the exclusion of the inadmissible portions of this evidence.

The record in this matter indicates that counsel was well-apprised of the facts, evidence, and law regarding the charges against Petitioner. Counsel had a sound trial strategy and vigorously argued the admissibility of each statement in the medical records, and succeeded in getting many statements excluded. Petitioner has not established that counsel's alleged failure with regard to these records was deficient performance or prejudicial to Petitioner. Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

**5. Trial counsel failed to research, refute, and apply the correct law pertaining to the admission of Petitioner's medical records**

Petitioner contends that, although trial counsel argued that admission of the medical records constituted hearsay and violated Petitioner's confrontation rights, counsel failed to argue that the admission of this evidence was not appropriate under "Rule 803(4)." (DE 1-1 at 15, citing to the Federal Rules of Evidence). Petitioner argues that this rule is only applicable to "court directed psychiatric examinations to determine whether a person is competent to stand trial." *Id.* Petitioner raised this claim in his state habeas action. (DE 6-24 at 59).

The federal evidentiary rules do not apply to state criminal proceedings. Construing this claim as alleging that evidence was admitted in violation of Texas Rule of Evidence 803(4), the claim is without merit. This rule provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> \*\*\*
> (4) Statement Made for Medical Diagnosis or Treatment. A statement that:
>> (A) is made for–and is reasonably pertinent to–medical diagnosis or treatment; and
>> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

A federal court reviewing a state court conviction may not "'engage in a finely tuned review of the wisdom of state evidentiary rules.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *quoting Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983). A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the admission of the evidence violated a

specific federal constitutional right or rendered the petitioner's trial fundamentally unfair. *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010).

The state appellate court concluded that any objection to this evidence predicated on this rule was without merit. As noted above, the admission of the records did not violate Petitioner's Confrontation Clause rights, as the statements in the records were non-testimonial. Accordingly, the state court's determination that Petitioner's counsel's performance in this regard was not deficient or prejudicial was not an unreasonable application of *Strickland*.

**6. Appellate counsel failed to raise a claim that the trial court improperly admitted evidence protected by attorney-client privilege**

Petitioner asserts that he had an attorney-client relationship with Mr. Steege, a clinical social worker. (DE 1-1 at 18). Petitioner argues that, because he had a privileged relationship with Mr. Steege, the admission of Mr. Steege's testimony that Petitioner sought sex offender treatment, "intruded on Petitioner's attorney client relationship." (DE 1-1 at 19).

In Petitioner's state habeas action, Petitioner's appellate counsel averred:

> Marquez claims that clinical social worker Mark W. Steege should not have been permitted to testify due to attorney-client privilege. However, my notes concerning the voir dire examination of Mr. Steege outside the jury's presence, indicate that Mr. Steege had two meetings with Marquez, one on June 23, 2008 and another on July 3, 2008. Steege did not take any notes of the June 23, 2008 [meeting] between himself and Mr. Marquez, he did not remember anything from the June 23, 2008 meeting, and Marquez came to see Steege on that date as a private client unrepresented by an attorney. Thus, no attorney-client communications were revealed in the June 23, 2008 meeting, and Steege could not remember what occurred at that meeting. Mr. Steege testified on voir dire that he assumed that between June 23, 2008 and July 3, 2008, he was contacted by attorney Stephen Nicholas[3] and directed to see

---

[3] Petitioner retained Mr. Nicholas to represent him in his criminal proceedings, and Mr. Nicholas entered an appearance on August 21, 2012. (DE 6-15 at 8). By October 11, 2012, Petitioner had retained Mr. Courtney to represent him, and Mr. Courtney was Petitioner's trial counsel. (DE 6-15 at 14-15).

Mr. Marquez and conduct a full sex offender evaluation. However, the prosecution agreed that the second meeting on July 3, 2008 was confidential and that no testimony would be sought on that meeting. The trial court ruled that Steege's testimony concerning the first meeting on June 23, 2008 would be admissible since Mr. Steege did not remember much, and because Marquez sought [the] services of a licensed sex offender treatment provider one and one half months after the outcry.

Mr. Steege's jury testimony is at RR vol. 5. pp. 170-174. Steege testified that Mr. Marquez was referred to his office by a therapist from Austin, and then referred to his office a second time by attorney Stephen Nicholas. Mr. Steege first met Marquez on June 23, 2008. Marquez came in as a private client, and the only document from that meeting was an intake sheet. The trial court sustained Marquez's objection to a question from the prosecutor about why Mr. Marquez came to see Steege. The only remaining questions of this witness were that Marquez's spouse was listed on the intake sheet, and that she may or may not have been at the June 23, 2008 meeting, but Steege "had no way of knowing" from the intake sheet. The testimony of Mr. Steege did not violate any attorney-client privilege.

(DE 6-24 at 117-18) (internal citations to the record omitted).

The record in this matter indicates that no testimony was admitted in violation of the attorney-client privilege. The Texas Court of Criminal Appeals necessarily concluded that none of Mr. Steege's testimony was admitted in violation of the attorney-client privilege and that, accordingly, appellate counsel's failure to raise this claim in Petitioner's appeal was neither deficient performance or prejudicial, as the claim was without merit. The state court's conclusion was not an unreasonable application of *Strickland*.

### 7. Appellate counsel failed to raise a claim of prosecutorial misconduct–hearsay

Petitioner contends that his appellate counsel should have argued that the prosecutor engaged in misconduct by arguing that the medical records were not inadmissible hearsay. (DE 1 at 9). This claim is essentially the same as Petitioner's third claim for federal habeas relief. (DE 1 at 7). Petitioner's appellate counsel addressed this claim, as raised in Petitioner's application for a state writ of habeas corpus, as follows:

. . . This ground repeats Mr. Marquez's earlier arguments in other grounds that the medical records should not have been admitted because they did not qualify under "statement made for medical diagnosis or treatment" exception to the hearsay rule in Texas Rule of Evidence 803(4). These records were admissible under that rule of evidence, as well as admissible as records of a regularly conducted activity under Rule 803(6) and as an opposing party's statements under Rule 801 (e)(2)(A).

(DE 6-24 at 118-19).

As explained above, the state appellate court's implicit conclusion that the evidence was admissible pursuant to the state laws of evidence is binding on this court. Accordingly, the state court's conclusion that appellate counsel's failure to raise this frivolous claim was neither deficient performance nor prejudicial, and was not an unreasonable application of *Strickland*.

## CONCLUSION

Having independently reviewed the state court record and considered Petitioner's claims for federal habeas relief, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of the facts in light of the evidence. Accordingly, 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief in this matter.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained

the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

It is therefore **ORDERED** that the Application for Writ of Habeas Corpus [DE 1], filed by Petitioner on September 12, 2016, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on June 13, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE